# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

GABRIEL C.,[1]

                                    Plaintiff,

        v.                                  6:18-CV-671
                                                 (ATB)

COMMISSIONER OF SOCIAL SECURITY,[2]

                                    Defendant.

B. BROOKS BENSON, ESQ., for Plaintiff
JOSHUA L. KERSHNER, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER
United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6).

## I.    PROCEDURAL HISTORY

On March 26, 2015, plaintiff filed an application for disabled child's Social Security benefits ("DIB"), alleging disability beginning July 13, 1996. (Administrative Transcript ("T") at 13, 219). The application was denied initially on September 23,

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only his first name and last initial.

[2] On June 17, 2019, Andrew Saul was sworn in as the new Commissioner of Social Security. Noting that former acting Commissioner Nancy A. Berryhill is still named as the defendant in this matter, the Clerk of the Court is directed to change the docket to reflect Andrew Saul, Commissioner of Social Security, as the proper party.

2015.  (T. 77-84).  Administrative Law Judge ("ALJ") Julia D. Gibbs held a hearing on December 15, 2016, at which plaintiff and Vocational Expert ("VE") Barry Brown testified.  (T. 31-64).  On May 19, 2017, ALJ Gibbs found that plaintiff was not disabled.  (T. 13-27).  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on April 4, 2018.  (T. 1-4).

## II.   **GENERALLY APPLICABLE LAW**

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months….." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such  severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hire if he applied for work

42 U.S.C. § 1382(a)(3)(B).  The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner]

2

next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled with-out considering vocational factors such as age, education, and work experience… Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B. Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin. Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review, "even more so than the 'clearly erroneous standard.'" *Brault,* 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze ever piece of conflicting evidence in the record. *See, e.g., Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (Finding we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "pick and choose evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

As of the date of the administrative hearing, plaintiff was 20 years old.  (T.  34). He lived at home with his father, and was enrolled in his third semester at Mohawk Valley Community College ("MVCC") as a full-time student. (T.  36-37, 152).

Plaintiff was previously diagnosed with autism spectrum disorder, Attention Deficit Hyperactive Disorder, depression, and a generalized anxiety disorder. (T.  37-38, 46).  As a result of his diagnoses, he had difficulty concentrating and with organization. (T.  38-39).  Plaintiff noticed that he "zoned out" often.  (T. 43).  He also struggled with working in groups.  (T.  41-42).  Large crowds gave him a headache and caused him

4

stress. (T. 43). Plaintiff also testified about his memory issues, specifically in regard to misplacing items and forgetting to do school work. (T. 43-45). His depression manifested as headaches, crying, and feelings of isolation and worthlessness, but "nothing too radical or extreme." (T. 47). As a result of his anxiety, plaintiff panicked when faced with stressful situations. (T. 47). He had trouble sitting still for movies and church, and slurred his words when he became "fidgety." (T. 49, 51-53). Plaintiff testified that he did not deal well with change. (T. 54-55).

Plaintiff treated with Licensed Mental Health Counselor ("LMHC") Karen L. Flemming, who worked under the supervision of psychologist Andy Lopez-Williams, Ph.D. (T. 37). He did not take any psychiatric medication for his condition. (T. 46). He spent his time at school, with friends, at doctor's appointments, or at home. (T. 51). He was enrolled in general education courses at MVCC, and received testing accommodations. (T. 39). He would ask for extra help from his professors when needed. (T. 40). He testified that his grades were "good."[3] (T. 41). He had "a few friends" and experienced some difficulty in high school when a few close friends moved away. (T. 48).

Plaintiff further testified that his left hand is slightly bigger than his right hand. As a result, he lacked some motor function in his left hand, however he could still zip his jacket, tie shoes, button his own shirts and write.[4] (T. 59). He could use a keyboard

---

[3]Plaintiff later testified about struggling to take an online psychology course at MVCC. (T. 55-56). Because he was not familiar with the platform, and due to his procrastination, he "freaked out over it" and ultimately "failed" the course with a D. (*Id.*). He later retook the same course in a classroom setting and passed. (*Id.*).

[4]Plaintiff is right-handed. (T. 58).

and mouse, but only used his two index fingers to type. (*Id.*).

The ALJ's decision provides a detailed statement of the medical and other evidence of record (T. 13-27), and plaintiff's counsel has reviewed the medical evidence extensively in his brief. (Plaintiff's Brief ("Pl.'s Br.") at 1-9) (Dkt. No. 13). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV. <u>THE ALJ'S DECISION</u>

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 13, 1996, the alleged onset date. (T. 15). At step two, the ALJ found the following severe impairments: left-sided enlargement of hand, of unknown etiology; depression; anxiety; attention deficit hyperactive disorder; and autism spectrum disorder. (*Id.*).

At step three of the sequential analysis, the ALJ found that none of plaintiff's severe impairments, alone or in combination, met or equaled the severity of a Listed Impairment. In reaching this determination, the ALJ considered listings 1.00 Musculoskeletal System and 11.00 Neurological, but determined that the medical evidence did not support the level of severity necessary for these listings. (T. 16). The ALJ further considered listing 12.02 Neurocognitive Disorders; 12.04 Depressive, Bipolar and Related Disorders; 12.06 Anxiety and Obsessive-Compulsive Disorders; and 12.10 Autistic Disorder and Other Pervasive Developmental Disorders. (*Id.*). However, in considering whether the "paragraph B" criteria were satisfied, the ALJ found that plaintiff's mental impairments failed to meet these listings.

At step four, the ALJ found that plaintiff had the RFC to perform light work, that

6

was limited to work that did not require the following: more than frequent use of plaintiff's hands for fine manipulation; interaction with the general public or exposure to crowds; working on an assembly line or other fast paced work; or more than superficial interaction with coworkers. (T. 18). The ALJ then determined that plaintiff had no past relevant work. However, relying on the VE's testimony, the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (T. 25-26). Accordingly, the ALJ determined that plaintiff was not disabled through the date of her decision. (T. 26).

## V.   ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1.   The ALJ erred in failing to give controlling weight to the opinion of plaintiff's treating neuropsychologist that plaintiff's mental impairments meet listings 12.04, 12.06, 12.08, 12.10 and 12.11.

2.   The ALJ erred in failing to give controlling weight to the opinion of plaintiff's treating psychologist that plaintiff cannot meet the basic mental demands of unskilled work because of his mental impairments.

3.   The ALJ erred in failing to properly develop the record, by not requesting clarifying assessments from plaintiff's treating neuropsychologist and therapist.

4.   The ALJ erred in relying on the VE's testimony as to jobs available to plaintiff.

(Pl.'s Br. at 9-25). Defendant argues that the ALJ properly evaluated the opinion evidence, and her decision is supported by substantial evidence. (Defendant's Brief ("Def's Br.") at 6-18) (Dkt. No. 18). For the following reasons, this court agrees with the defendant and will affirm the Commissioner's decision.

## DISCUSSION

## VI.  LISTED IMPAIRMENT

### A.  Legal Standard

At step three of the disability analysis, the ALJ must determine if plaintiff suffers from a listed impairment. *See* 20 C.F.R. §§ 404.1520, 416.920.  It is the plaintiff's burden to establish that his or her medical condition or conditions meet *all* of the specific medical criteria of particular listed impairments.  *Pratt v. Astrue,* No. 7:06-CV-551, 2008 WL 2594430 at *6 (N.D.N.Y. June 27, 2008) (citing *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990)).  If a plaintiff's "impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Id.*  In order to demonstrate medical equivalence, a plaintiff "must present medical findings equal in severity to all the criteria for the *one* most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. at 531 (emphasis added).

### B.  Application

Plaintiff raises several arguments with respect to the ALJ's step three analysis. First, plaintiff argues that the ALJ's determination that plaintiff did not meet the paragraph B criteria was not supported by substantial evidence.  Plaintiff further argues that the ALJ erred in failing to assess whether plaintiff met the paragraph C criteria of Listings 12.04 and 12.06, as an alternative to the paragraph B criteria.  Last, plaintiff argues that the ALJ erred in neglecting to consider whether plaintiff met the criteria of Listings 12.08 and 12.11.

The ALJ addressed listings 12.04, 12.06, and 12.10[5] in her step three analysis. To meet listing 12.04 (Depressive, Bipolar and Related Disorders), a claimant must establish the criteria of paragraphs A and B or the criteria of paragraphs A and C. 20 C.F.R. § 404, Subpart P, App. 1, Listing 12.04. The paragraph A criteria requires medical documentation of either a depressive disorder or bipolar disorder, while paragraph B requires extreme limitation of one area or a marked limitation of two areas of mental functioning, which include (1) understanding, remembering or applying information, (2) interacting with others, (3) concentrating, persisting or maintaining pace, and (4) adapting or managing oneself. *Id.* Paragraph C requires a medically documented history of the existence of the disorder over a period of at least two years, with evidence of both (a) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (b) marginal adjustment, that is, minimal capacity to adapt to changes in environment or to demands that are not already part of daily life. *Id*.

A claimant's burden for meeting listing 12.06 (Anxiety and Obsessive Compulsive Disorders) is similar, requiring the claimant to establish the criteria of paragraphs A and B or the criteria of paragraphs A and C. 20 C.F.R. § 404, Subpart P, App. 1, Listing 12.06. Paragraph A entails medical documentation of an anxiety disorder; panic disorder or agoraphobia; or obsessive-compulsive disorder. *Id.*

___

[5]The ALJ also considered listing 12.02 (Neurocognitive Disorders) as a part of her step three analysis, however plaintiff does not appear to dispute the ALJ's findings with respect to this listing. (Pl.'s Br. at 9-20).

Paragraph B again requires an extreme limitation of one area or a marked limitation of two areas of mental functioning. *Id.* The "serious and persistent" criteria for paragraph C are also identical to those under listing 12.04. *Id.*

To meet listing 12.10 (Autism Spectrum Disorder), a claimant must establish the criteria of both paragraph A and paragraph B. 20 C.F.R. § 404, Subpart P, App. 1, Listing 12.10. Paragraph A requires medical documentation of both (1) qualitative deficits in verbal communication, nonverbal communication, and social interaction; and (2) significantly restricted, repetitive patterns of behavior, interests, or activities. (*Id.*). Paragraph B requires the same extreme limitation of one area or a marked limitation of two areas of mental functioning. *Id.*

In her decision, the ALJ explicitly discussed each of the paragraph B criteria, and cited evidence in the record supporting each consideration. (T. 16-18). To that end, the ALJ found that plaintiff had mild limitations for understanding, remembering or applying information. (T. 16). This area of mental functioning refers to plaintiff's ability to learn, recall, and use information to perform work activities. 20 C.F.R. § 404, Subpart P, App. 1, Listing 12.00(E)(1). Examples (not an exhaustive list) include understanding and learning terms, instructions, procedures; following one- or two-step instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions. *Id.* In concluding that plaintiff had mild limitations in this domain, the ALJ considered plaintiff's testimony that he was a high school graduate and had completed three semesters at MVCC, where he was enrolled

full-time. (T. 36-37). The ALJ also cited the consultative report of Jeanne Shapiro, Ph.D., who noted that plaintiff's attention and concentration were intact, as well as his recent and remote memory skills. (T. 16-17; 238). In further support of her opinion, the ALJ cited a report prepared by plaintiff's psychologist, Andy Lopez-Williams, Ph.D., noting that plaintiff's psychological test scores relative to memory skills ranged from low average to high average. (T. 17).

With respect to interacting with others, the ALJ concluded that plaintiff had moderate limitations. (T. 17). This area of mental functioning refers to the plaintiff's ability to relate and work with supervisors, co-workers, and the public. 20 C.F.R. § 404, Subpart P, App. 1, Listing 12.00 (E)(2). Examples within this domain include cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues; responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. (*Id.*). In support of her determination, the ALJ acknowledged plaintiff's reported anxiety in social situations, but cited to medical evidence from both treating sources and the consultative opinion indicating that plaintiff had friends, had no difficulty interacting with college professors (but did experience difficulty interacting with his peers), and denied having panic attacks in large crowds. (T. 17). This court also notes that plaintiff was a volunteer at Ft. Stanwix during the relevant period of alleged disability, where his duties included answering visitors' questions and participating in civil war re-enactments. (T. 437). The ALJ further cited Dr. Shapiro's statement that, upon examination, plaintiff's demeanor and responsiveness

11

to questions were cooperative, and his manner of relating, social skills, and overall presentation were adequate. (*Id.*). The ALJ recognized that plaintiff's demeanor and responsiveness at the administrative hearing were equally as appropriate. (*Id.*).

The ALJ next determined that plaintiff had mild limitations with regard to concentrating, persisting or maintaining pace. (T. 18). This area of mental functioning refers to the plaintiff's ability to focus attention on work activities and stay on task at a sustained rate. 20 C.F.R. § 404, Subpart P, App. 1, Listing 12.00(E)(3). Examples in this domain include initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day. (*Id.*). In making this determination, the ALJ considered plaintiff's testimony that he sometimes waited to complete school assignments, causing him anxiety; however the ALJ also noted Dr. Shapiro's assessment that plaintiff's concentration was intact. (T. 18). Dr. Shapiro further indicated that plaintiff's intellectual functioning was estimated to be in the average range, and that his general fund of knowledge appeared to be appropriate to experience. (*Id.*). The ALJ also evaluated plaintiff's reported difficulty concentrating and staying organized in conjunction with his ability to complete three semesters of college at MVCC. (*Id.*). She acknowledged that plaintiff's father managed his money, and that plaintiff, at times, reportedly lost track of his environment. (T. 18). However, plaintiff also reported that

he could carry out a broad range of activities, including using a microwave, preparing cold food, general cleaning, shopping, driving, and using public transportation. (T. 18). The ALJ particularly relied on plaintiff's ability to drive as requiring more than a minimal level of concentration. (*Id.*).

Last, the ALJ determined that plaintiff had mild limitations for adapting or managing oneself. (*Id.*). This area of mental functioning refers to plaintiff's ability to regulate emotions, control behavior, and maintain well-being in a work setting. 20 C.F.R. § 404, Subpart P, App. 1, Listing 12.00(E)(4). Examples include responding to demands; adapting to changes; managing psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. *Id.* In support of her determination, the ALJ referenced plaintiff's college experience and his ability to prepare food, do housework, drive, and use public transportation. (T. 18). She noted that "[plaintiff's] medical records for the period under consideration do not show that his limitation in this area is greater than mild." (*Id.*). Furthermore, plaintiff's high school records consistently reflect his intention to pursue a post-secondary degree, and his consideration of historian as a chosen career path. (T. 187, 196-198). Plaintiff was also noted to be "able to adjust to community environments" with respect to his enrollment at MVCC. (T. 175).

Based on the ALJ's analysis, which is supported by treatment notes, hearing testimony, and medical opinions of record, her determination that plaintiff's limitations did not satisfy the paragraph B criteria was supported by substantial evidence. *See*

*Sweet v. Comm'r of Soc. Sec.,* No. 6:15-CV-0156 (GTS/WBC), 2016 WL 11478205, at *3 (N.D.N.Y. July 6, 2016) (Rep't-Rec.) ("[u]nder the substantial evidence standard of review, it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position[;] [p]laintiff must show that no reasonable factfinder could have reached the ALJ's conclusion based on the evidence in record"), adopted, 2016 WL 4401374 (N.D.N.Y. Aug. 18, 2016).

Plaintiff argues that the ALJ erred in failing to adopt the "marked" and "extreme" limitations assessed by LMHC Flemming and Dr. Lopez-Williams in rendering her step three determination. While this argument is discussed in greater detail in the next section regarding plaintiff's RFC, the court will address plaintiff's contention that the ALJ should have obtained clarifying opinions from these treatment providers in light of the contemporaneous listings modification.

On September 26, 2016, the Social Security Administration ("SSA") provided notice of its modification of "the criteria in the Listing of Impairments (listings) that [it] use[s] to evaluate claims involving mental disorders in adults and children under titles II and XVI of the Social Security Act (Act)." Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66138 (Sept. 26, 2016). The modifications, however, did not go into effect until January 17, 2017, and the implementing regulations stated that the SSA would "apply them to new applications filed on or after the effective date of the rules, and to claims that are pending on or after the effective date." (*Id.*). Thus, an ALJ and any subsequent reviewing body is directed to apply the regulations that were in effect at the time the ALJ rendered his or her decision. *Id.* Particularly

relevant to this case was the SSA's modification of the paragraph B criteria, which prior to January 17, 2017, consisted of the following areas of mental functioning: (1) activities of daily living, (2) maintaining social function, (3) maintaining concentration, persistence or pace, and (4) repeated episodes of decompensation, each of extended duration. As previously set forth, the current paragraph B criteria implemented as of January 17, 2017 are (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting or maintaining pace, and (4) adapting or managing oneself.

Plaintiff's administrative hearing was held on December 15, 2016, at which time plaintiff's attorney advised the ALJ that he had not yet obtained listings and RFC opinion evidence from Dr. Lopez-Williams or LMHC Flemming, and he requested and extension of time to do so. (T. 35-36). On January 6, 2017, Dr. Lopez-Williams and LMHC Flemming prepared several reports on behalf of plaintiff, including an Autistic Disorder and Other Pervasive Developmental Disorders Questionnaire (Listing 12.10); an Adult Attention Deficit Hyperactivity Disorder Questionnaire; and a Mental Impairment Questionnaire (RFC & Listings). (T. 441-54). These forms, appearing to have been provided by plaintiff's counsel, reference the paragraph B criteria in place prior to the January 17, 2017 implementation date. (*Id.*). The ALJ analyzed these reports and the other medical evidence of record in reaching her disability determination. Her May 17, 2017 decision reflects her analysis of LMHC Flemming and Dr. Lopez-Williams's opinion evidence, however the ALJ did so utilizing the new paragraph B criteria, per the regulations' mandate.

Plaintiff argues that remand is appropriate because the ALJ failed to seek

clarifying opinions from Dr. Lopez-Williams and LMHC Flemming "as to what effect the change in the [l]istings would have on their opinions." (Pl.'s Br. at 23-24). The court does not find this argument persuasive. As a threshold matter, the listings modification was announced in September 2016, several months before the administrative hearing was held in December 2016. As of the hearing, plaintiff had yet to obtain any opinion evidence from his treatment providers. In fact, the record reflects that plaintiff was granted an extension of time to January 11, 2017, to provide the ALJ with the opinion evidence. (T. 234). Despite notice of the modification having been published for the preceding five months, and the pending implementation date of January 17, 2017, plaintiff ultimately submitted questionnaires to the providers which referenced the pre-modification paragraph B criteria. Keeping in mind that the "[p]laintiff has the burden of proof at step three to show that [his] impairments meet or medically equal a Listing" (*Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (Rep't-Rec.), adopted, 614 F. Supp. 2d 252 (N.D.N.Y. 2009)), plaintiff had the opportunity to obtain different questionnaires that identified the new paragraph B criteria from his treatment providers, or at the very least seek clarification from the ALJ as to how the modification to the listings would affect plaintiff's case. Nevertheless, plaintiff only now raises the issue before this court, on appeal.[6]

_____

[6]The administrative record reflects that, upon receipt of the ALJ's May 19, 2017 decision, plaintiff sought a review of the ALJ's determination with the Appeals Council. (T. 143). Plaintiff's request for review raises several contentions with respect to the ALJ's findings, however the listing modification and ALJ's paragraph B analysis is not one of them. (*Id.*). In the same letter, plaintiff requested an extension of time in which to submit "new and additional material medical evidence," as well as legal argument supporting plaintiff's position. (*Id.*). However, there is no evidence in the administrative record that plaintiff ever actually submitted new evidence to the Appeals Council, including any opinion evidence identifying the new paragraph B criteria.

Regardless, the ALJ's analysis of the opinion evidence submitted by Dr. Lopez-Williams and LMHC Flemming at step three of her analysis, and her "failure" to seek clarification with respect to the paragraph B modifications, was not error necessitating remand. "Although an ALJ has the affirmative duty to develop the record, the ALJ's duty to develop the record is not 'infinite.'" *Peterson v. Berryhill,* No. 17-CV-6397, 2018 WL 4232896, at *4 (W.D.N.Y. Sept. 5, 2018) (citing *Tatelman v. Colvin*, 296 F. Supp. 3d 608, 612 (W.D.N.Y. 2017)). When "evidence in hand is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary." *See id.* (quoting *Kinslow v. Colvin*, No. 5:12-CV-1541 (GLS/ESH), 2014 WL 788793, at *4 n.10 (N.D.N.Y. Feb. 25, 2014)); *see also Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (where there are no "obvious gaps" in the record, the ALJ is not obligated to seek additional information). Here, despite plaintiff's contentions to the contrary, there was no "conflict or ambiguity" presented by the treatment providers' opinions that required clarification. Even assuming plaintiff's treatment providers found "marked" and "extreme" limitations for the new paragraph B criteria, as they did with respect to the old paragraph B criteria, it would not alter the weight that the ALJ ultimately afforded an opinion of such extreme limitations, or the existence of other "clearly credible evidence" supporting the ALJ's determination to the contrary. *See Salmini v. Comm'r of Soc. Sec.,* 371 F. App'x 109, 112 (2d Cir. 2010) (finding step three determination to be supported by substantial evidence "so long as we are able to look to other portions of the ALJ's decision and to clearly credible evidence . . .") (citations and quotations omitted). The SSA acknowledges, and plaintiff concedes, that there is considerable overlap between the pre- and post-modification criteria of

paragraph B,[7] and many of the considerations remain similar. Thus, the questionnaires provided, coupled with the remaining evidence of record, provided substantial evidence to support the ALJ's analysis of the paragraph B criteria. It was not, therefore, incumbent on the ALJ to seek additional opinion evidence from plaintiff's treatment providers. *See Gonzalez v. Colvin*, 15 Civ. 5011, 2016 WL 6780000, at *18-19 (S.D.N.Y. Nov. 16, 2016) (finding that the ALJ had no further obligation to develop the record where the letters in the medical record supported the ALJ's decision); *Tatelman v. Colvin*, 296 F. Supp. 3d 608, 612 (W.D.N.Y. 2017) (finding that the ALJ has fulfilled the duty to develop the record where the plaintiff did not allege, nor was there evidence to otherwise suggest, that additional records would have contained any findings or evidence not already accounted-for in the 150 pages of medical documentation in the record).

Next, I consider plaintiff's argument that the ALJ failed to consider whether plaintiff alternatively satisfied the paragraph C criteria for listings 12.04 and 12.06, mandating a finding of disability.[8] (Pl.'s Br. at 20-21). The paragraph C criteria for both

---

[7] *See* Pl.'s Br. at 12 ("Two of the [paragraph B criteria] are similar enough between "old" and "new" (i.e. 'social functioning' and 'interacting with others' and 'concentration, persistence or pace[,]' which are the same in both..."); Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. at 66144 ("Rather than [activities of daily living] being one separate area in which we evaluate a person's functioning, ADL are now a source of information about all four of the paragraph B areas of mental functioning."); *Id.* (acknowledging "overlap" between new criteria of "understand, remember and apply information" and remaining criteria of "concentrate, persist and maintain pace); *Id.* at 66145 ("Additionally, we note that the content of the B4 criteria [adapting or managing oneself] is not new or different from what adjudicators are already accustomed to evaluating and determining.").

[8] The court assumes, and the Commissioner does not dispute, that plaintiff satisfied the paragraph A criteria for listings 12.04 and 12.06. The ALJ previously found depression and anxiety among plaintiff's severe impairments, and the treatment records and medical opinion evidence support a finding of the same. (T. 15).

listings requires a showing of "marginal adjustment," meaning that the claimant has minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life. 20 C.F.R. 404 Subpt. P, App. 1, §§ 12.04(C), 12.06(C); see also id. § 12.00(D) (outlining procedure for assessing treatment and psychosocial support); id. § 12.00(G) (defining terms used in Subparagraph C). In this matter, a finding that plaintiff satisfied the paragraph C criteria would render an automatic determination that plaintiff was disabled under listings 12.04 and 12.06, regardless of the paragraph B analysis.

Although plaintiff correctly argues that the ALJ did not discuss his eligibility under subparagraph C, there was no legal error, as the evidence of record fails to establish that plaintiff has only "marginal adjustment." *See Schildwachter. v. Berryhill*, No. 17-CV-7277, 2019 WL 1116256, at *7 (S.D.N.Y. Feb. 8, 2019) (finding harmless error where the ALJ failed to explicitly assess paragraph C criteria in order to determine plaintiff's listing eligibility, in light of other portions of ALJ's decision and clearly credible evidence indicating that plaintiff could not meet the required criteria). The regulations provide that marginal adjustment is achieved where changes or increased demands have led to exacerbation of symptoms and signs, and to deterioration in functioning. C.F.R. 404 Subpt. P, App. 1, § 12.00 (G)(2)(C). Examples of such deterioration include the inability to function outside of your home or a more restrictive setting, without substantial psychosocial support; the necessity for a significant change in medication or other treatment; and episodes of deterioration that require hospitalization. (*Id.*).

Here, plaintiff's testimony and disability application indicate his ability to attend

college and successfully complete courses, drive a car, volunteer at a historical monument, shop, prepare simple meals, socialize with a few close friends, care for his cat, and complete household chores. (T. 36-37, 48, 152-60). Plaintiff's high school academic records outline plaintiff future intentions with respect to educational and career goals, noting that plaintiff continued to make progress and "has become a leader within the classroom." (T. 198). Dr. Lopez-Williams noted plaintiff's thought processes were goal directed, organized, logical and linear, with future oriented thought content. (T. 438). Plaintiff was not taking any psychiatric medication, nor is there any indication that he had been hospitalized for a mental episode. Based on the ALJ's findings and the evidence of record, no reasonable fact finder could have found that plaintiff had marginal adjustment. *See Howarth v. Berryhill,* No. 3:16-CV-1844, 2017 WL 6527432, at *7 (D. Conn. Dec. 19, 2017) (citing *Fischer-Ross v. Barnhart,* 431 F.3d 729, 735 (10th Cir. 2005) (applying harmless error to the ALJ's failure to articulate his reasoning where the ALJ's findings elsewhere, "coupled with indisputable aspects of the medical record," indicate that "[n]o reasonable factfinder could conclude otherwise")); *see also Jeffrey W. Berryhill,* No. 1:18-CV-0115 (LEK), 2019 WL 2210593, at *7-8 (N.D.N.Y. May 22, 2019) (finding plaintiff did not satisfy the paragraph C criteria with the requisite "marginal adjustment" where plaintiff's daily activities included managing money, playing poker, using his computer, driving a car, shopping, cooking, fishing, walking the dogs, cleaning his clothes, and vacuuming, and medical evidence indicated plaintiff's good concentration, intact memory, normal thought content, and goal oriented thought processes); *Mitchell v. Berryhill*, No. 16-CV-6588, 2018 WL 3300683, at *18 (S.D.N.Y. Feb. 2, 2018) (Rep't-Rec), adopted

sub nom., *Mitchell v. Colvin*, 2018 WL 1568972 (S.D.N.Y. Mar. 30, 2018) (finding claimant did not have marginal adjustment where claimant had interactions with family and friends at church, logical thoughts processes, intact judgment, good concentration, and could cook, clean, shop, and do laundry).

The Mental Impairment Questionnaire submitted by LMHC Flemming and Dr. Lopez-Williams indicates, without explanation, that plaintiff had a current history of one or more years' inability to function outside a highly supportive living arrangement,[9] with an indication of continued need for such an arrangement. (T. 443). To the extent plaintiff contends that this is evidence he satisfied the paragraph C criteria, as further set forth below the court agrees that the extreme limitations in this questionnaire are not supported by substantial evidence. It was, therefore, not improper to accord the opinion minimal weight. *See Schildwachter v. Berryhill,* 2019 WL 1116256, at *7 (finding that the ALJ's weighing of competing medical evidence at other steps of disability analysis was sufficient to justify the ALJ's paragraph C determination, despite the ALJ's failure to specifically weigh the competing evidence of marginal adjustment).

Last, any error the ALJ committed by not explicitly discussing listings 12.08

---

[9]The regulations set forth the following regarding structured and supportive settings:

> Particularly in cases involving chronic mental disorders, overt symptomatology may be controlled or attenuated by psychosocial factors such as placement in a hospital, halfway house, board and care facility, or other environment that provides similar structure. Highly structured and supportive settings may also be found in your home. Such settings may greatly reduce the mental demands placed o n y o u .

20 C.F.R. 404 Subpt. P, App. 1, §§ 12.00(F) (2016). Clearly, plaintiff was never placed in such a structured facility, and the record lacks any indication that plaintiff's home life provided structure akin to that of a hospital, halfway house, or care facility.

(Personality and Impulse-Control Disorders) and 12.11 (Neurodevelopmental Disorders) was harmless. Those listings have the same paragraph B requirements as listings 12.04, 12.06, and 12.10.[10] *Compare* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B), 12.06(B), 12.10(B), *with* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.08(B), 12.11(B). Thus, because the ALJ found that plaintiff's mental impairments did not meet the requirements of paragraph B for listings 12.04, 1206, and 12.10, he implicitly determined that plaintiff's impairments did not meet the criteria for listings 12.08 and 12.11. *See, e.g., Cote v. Berryhill*, No. 3:17-CV-01843, 2018 WL 4092068, at *12-13 (D. Conn. Aug. 28, 2018) ("[e]ach of the listings that were considered by the ALJ (Listings 12.02 and 12.06) has the same paragraph B criteria as the listings plaintiff argues should have been considered (Listings 12.08 and 12.10)[;] ... [a]s a result, the ALJ did not err in failing to explicitly consider Listings 12.08 and 12.10[;] [t]he ALJ assessed the paragraph B criteria for Listings 12.02 and 12.06, which are the same for Listings 12.08 and 12.10, and the ALJ's assessment of that criteria is supported by substantial evidence"); *Sweet v. Comm'r of Soc. Sec.*, 2016 WL 11478205, at *3 ("[a]ny error the ALJ may have made in failing to specifically discuss Listing 12.04 was harmless because the criteria outlined in 12.04(B) is identical to the paragraph (B) criteria of Listing 12.02 and 12.04 and the criteria in 12.04(C) is identical to the (C) criteria of 12.02(C)[;] [t]herefore, because the ALJ's determination that the record did not support a finding that [p]laintiff met the paragraph (B) and (C) criteria of Listings

---

[10]Unlike listings 12.04 and 12.06, listings 12.08 and 12.11 do not have an alternative paragraph C criteria, and a plaintiff must satisfy both the paragraph A and paragraph B criteria in order to meet the listing requirements. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.08, 12.11.

12.02 and 12.06, the same reasoning, when applied to Listing 12.04, would reach the result that [p]laintiff did not meet Listing 12.04"); *Rye v. Colvin*, No. 2:14-CV-170, 2016 WL 632242, at \*5-6 (D. Vt. Feb. 17, 2016) ("[b]ecause the ALJ assessed the paragraph B criteria for Listing 12.04, and that criteria is the same for Listing 12.08, and because the ALJ's assessment of that criteria is supported by substantial evidence, the ALJ did not err in failing to explicitly consider Listing 12.08 at step three").

Accordingly, remand is not warranted based on the ALJ's step three analysis.

## VII. RFC EVALUATION/TREATING PHYSICIAN

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at \*2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at \*2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at \*12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's

subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.    Weight of the Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996). Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings." The responsibility for determining these issues belongs to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2. These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether

the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered. *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider the four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)). Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error. *Id.* at 96. It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed." *Id.*

## B.     Application

Plaintiff argues that the ALJ misapplied the treating physician rule by failing to give controlling weight to the medical opinions co-signed by Dr. Lopez-Williams.  The plaintiff further argues that the ALJ improperly weighed the other medical opinions of record, including LMHC Flemming's restrictive findings.  The Commissioner contends that Dr. Lopez-Williams's opinion was not entitled to controlling weight, and the ALJ properly evaluated the opinion evidence and reached a determination supported by substantial evidence.  This court agrees.

As previously discussed, LMHC Flemming and Dr. Lopez-Williams prepared and cosigned several medical opinions on behalf of plaintiff.  Included in these reports was their RFC opinion, noted in a check-box form, that plaintiff was unable to meet competitive standards in his ability to carry out very short and simple instructions, and that plaintiff otherwise had no useful ability to function in the fifteen remaining mental abilities and aptitudes for unskilled work.  (T.  444).  Although prompted to do so, neither LMHC Flemming nor Dr. Lopez-Williams provided any explanation or medical evidence supporting their opinion that plaintiff's limitations fell into the most restrictive categories.  (*Id.*).  LMHC Flemming and Dr. Lopez-Williams further opined that plaintiff was unable to meet competitive standards in his ability to interact appropriately with the general public and adhere to basic standards of neatness and cleanliness; and that plaintiff had no useful ability to function in his ability to maintain socially appropriate behavior, travel in unfamiliar places, and use public transportation.  (T. 445).  These restrictive limitations also lacked any explanation or supporting evidence.  (*Id.*).

At the outset, Dr. Lopez-Williams is not a treating physician whose opinion is entitled to controlling weight. The Second Circuit has explained that the ALJ gives a treating physician controlling weight because of the "continuity of treatment he provides and the doctor/patient relationship he develops[.]" *Weathers v. Colvin,* No. 3:15-CV-575(FJS), 2017 WL 177649, at *5 (N.D.N.Y. Jan. 17, 2017) (citing *Mongeur v. Heckler,* 722 F.2d 1033,1039 n.2 (2d Cir. 1983)). However, a physician who only examines a plaintiff "once or twice" does not develop the requisite physician/patient relationship to support the conclusion that he is a treating physician. *See id.* Similarly, in *Petrie v. Astrue*, the Second Circuit found that failing to give controlling weight to a physician who had "limited and remote" contact with the patient was not error. 412 Fed. App'x 401, 405 (2d Cir. 2011).

In this case, the administrative record reflects that Dr. Lopez-Williams conducted an initial intake evaluation of plaintiff on June 9, 2015. (T. 436-440). After this initial examination, plaintiff commenced weekly therapy visits with LMHC Flemming, who worked out of the same office as Dr. Lopez-Williams. (T. 255-440). Dr. Lopez-Williams did not meet with plaintiff again until December 23, 2015. (T. 361-62). Approximately one month later on January 28, 2016, Dr. Lopez-Williams prepared a Confidential Psychological Report on behalf of plaintiff. (T. 248-51). The report appears to summarize a battery of psychological tests that had been administered to plaintiff in the preceding months, however it is unclear if Dr. Lopez-Williams administered the tests himself or merely evaluated the results, after the fact. (*Id.*). Regardless, there is no other indication of Dr. Lopez-William's involvement in plaintiff's treatment through the date of the ALJ's May 2017 decision. Thus, the ALJ

did not err in refusing to accord Dr. Lopez-Williams opinions controlling weight, due to his "limited and remote contact" with plaintiff. *Petrie v. Astrue,* 412 F. App'x at 405.

To clarify, this court does not dispute the legal presumption that, because Dr. Lopez-Williams co-signed the January 6, 2017 questionnaires, the statements therein constitute his opinion as well as LMHC Flemming's opinion. *See Waters v. Astrue*, No. 5:10-CV-110, 2011 WL 1884002, at *8 n.5 (D. VT. May 17, 2011) ("Cases have held that when a doctor and a physician's assistant sign the same reports, 'the opinions [are] those of [the treating physician] as well as those of [the physician's assistant.].' " (alterations in original) (quoting *Riechl v. Barnhart*, No. 02-CV-6169, 2003 WL 21730126, at *11 (W.D.N.Y. June 3, 2003)). However, as previously discussed Dr. Lopez-Williams signature on these evaluations did not mandate an analysis under the treating physician rule, in light of his minimal treating relationship with plaintiff. Moreover, the opinion evidence signed by Dr. Lopez-Williams was prepared almost a year after he had last personally seen plaintiff. *See Petrie v. Astrue,* 412 Fed. App'x at 405. Accordingly, Dr. Lopez-Williams's opinions were not entitled to controlling weight.

Nevertheless, it was still incumbent upon the ALJ to evaluate the medical opinions cosigned by Dr. Lopez-Williams and LMHC Flemming (20 C.F.R. § 416.927(C) ("Regardless of its source, we will evaluate every medical opinion we receive.")), and the ALJ's decision reflects that she sufficiently discharged this responsibility. In affording Dr. Lopez-Williams and LMHC Flemming's medical opinions less than significant weight, the ALJ noted that they consisted "largely of checked-off responses without detailed medical explanation." (T. 23). *See Heaman v.*

*Berryhill*, 765 Fed. App'x 498 (2d Cir. 2019) (The ALJ provided good reasons for according medical opinion less weight, "including that their opinions were merely checkbox forms that offer little or nothing with regard to clinical findings and diagnostic results . . .")(internal quotations omitted); *Klodzinski v. Astrue*, 274 Fed. App'x 72, 73 (2d Cir. 2008) (holding that a standardized multiple-choice form completed by a treating physician was only marginally helpful); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (stating that the standardized form was only marginally useful).

The ALJ further noted that plaintiff's mental health treatment records were inconsistent with the degree of limitation specified in Dr. Lopez-Williams and LMHC Flemming's medical opinions. (T. 23). Although the ALJ could have better identified the support for her contention with specific examples, her premise is nonetheless supported by substantial evidence in the record. *See Harrison v. Comm'r of Soc. Sec.*, No. 17-CV-98, 2018 WL 3153399, at *3 (W.D.N.Y. June 28, 2018) (When "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that [s]he have mentioned every item of testimony presented to [her] or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead [her] to a conclusion of disability.")(citing *Mongeur v. Heckler*, 722 F.2d at 1040).

Particularly inconsistent with the restrictive limitations set forth in Dr. Lopez-Williams and LMHC Flemming's medical opinions are Dr. Lopez-Williams's own findings upon mental examination of plaintiff, along with his summary of plaintiff's psychologic testing results. On June 9, 2015, Dr. Lopez-Williams conducted a mental status examination of plaintiff, finding him to be cooperative with poor eye contact. (T. 438). He further noted that plaintiff's speech was a normal rate, and while his mood

was anxious his thought processes were goal directed, organized and linear, with no abnormal thought content. (*Id.*). On December 23, 2015, Dr. Lopez-Williams met with plaintiff to discuss his psychological evaluation results, which indicated "mild to moderate" impairments in attention, visual memory, cognitive flexibility and verbal reasoning. (T. 361). Plaintiff's auditory memory and executive skills were otherwise noted to be well-developed/intact. (*Id.*). Dr. Lopez-Williams indicated that plaintiff was "likely to have an impairment in any . . . occupational environment[,] owing to confluence of cognitive impairments and [symptoms] of [diagnoses]." (*Id.*). The ALJ does not, however, dispute that plaintiff will have some degree of occupational impairment due to his diagnoses, and tailored an RFC the accommodate the same. In any event, Dr. Lopez-Williams's examination findings and summary of testing results do not support the extreme limitations set forth in his RFC analysis. (T. 444-45).

Dr. Lopez-Williams and LMHC Flemming's medical opinions are further contradicted by other evidence in the record, including plaintiff's therapy notes with LMHC Flemming. For example, despite consistently noting that plaintiff was appropriately dressed with adequate grooming and hygiene for each therapy session, LMHC Flemming opined that plaintiff was unable to meet competitive standards with respect to adhering to basic standards of neatness and cleanliness. (T. 257, 265, 277, 287, 291, 297, 302, 305, 309, 312, 318, 325, 328, 331, 333, 445). LMHC Flemming's medical opinion also assigned plaintiff a Global Assessment of Functioning ("GAF") score of 40, without explaining how this opinion conformed with her treatment records for plaintiff, which consistently assessed him with a GAF score of 50. (T. 23). With respect to LMHC Flemming's mental examinations reflected during her therapy

sessions with plaintiff, the ALJ elected to credit the less extreme examination findings

and conclusions of Dr. Lopez-Williams and consultative examiner Jeanne A. Shapiro,

M.D. (T. 236-240, 436-40).[11] *See Simmons v. Comm'r of Soc. Sec.,* 103 F. Supp. 3d 547,

565 (S.D.N.Y. 2015) ("When reviewing the medical evidence, the ALJ has the authority

to select among conflicting opinions. Thus, if there are genuine conflicts within the

evidence, their resolution is a matter committed to the Commissioner's discretion.")

(internal quotations and citations omitted).

Medical opinion evidence was also submitted in the form of a September 2, 2015

psychiatric examination report prepared by psychologist Jeanne A. Shapiro, Ph.D. (T.

236-40). Upon examination, Dr. Shapiro noted that plaintiff was cooperative and his

manner of relating, social skills, and overall presentation was adequate. (T. 238).

Plaintiff was appropriately dressed and his personal hygiene and grooming was good.

(*Id.*). Motor behavior was normal, and eye contact was appropriate. (*Id.*). His speech

was clear and adequate, with coherent and goal directed thought processes. (*Id.*).

Plaintiff's mood was noted to be calm, and he was relaxed and comfortable. (*Id.*).

Attention and concentration were intact, along with recent and remote memory skills.

(*Id.*). Insight and judgement were "good." (*Id.*). Based on her overall examination, Dr.

Shapiro opined that plaintiff had no limitations in understanding and following simple

---

[11]The court further notes that LMHC Flemming's check-box findings upon mental examination were, at times, internally inconsistent with the progress note as a whole. For example, one treatment record indicates "there was communication by the patient . . . of suicide ideation or urges to self injure . . .", however LMHC Flemming checked "No SI [suicidal ideation])" in the check-box form upon examination. (T. 269-70). Furthermore, the December 1, 2015 treatment record indicates that plaintiff's father attended the session, and plaintiff himself was not present; however LMHC Flemming somehow reported mental examination findings from that session. (T. 372-73).

instructions and directions; performing simple or complex tasks; maintaining attention and concentration for tasks; attending to a routine and maintaining a schedule; learning new tasks; and making appropriate decisions. (T. 239). She further opined that plaintiff had mild limitations in his ability to consistently relate to and interact well with others; as well as in his ability to deal with stress. (*Id.*).

The ALJ afforded "great weight" to some portions of Dr. Shapiro's opinion because they were supported by other evidence of record, including Dr. Lopez-Williams findings upon mental examination and report of psychological testing. However, the ALJ gave less than significant weight to other portions of Dr. Shapiro's opinion, including that plaintiff was only mildly limited in his ability to consistently relate to others. The ALJ disagreed, finding that plaintiff's mental health treatment records indicated his limitation in this area was greater than mild. (T. 20). The ALJ incorporated this determination into her ultimate RFC in restricting plaintiff from work that required interaction with the general public or exposure to crowds, or more than superficial interaction with co-workers. (T. 18). This was an appropriate exercise of the ALJ's discretion. *See Artinian v. Berryhill,* No. 16-CV-4404, 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018) ("It is entirely proper for the ALJ to only credit portions of medical source opinions, or weigh different parts of the same opinion differently.") (citations omitted); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

The ALJ's partial reliance on consulting examiner Dr. Shapiro's opinion was not error. *See Colbert v. Comm'r of Soc. Sec.*, 313 F. Supp. 3d 562, 576-77 (S.D.N.Y. 2018) ("[I]t is well-settled that a consulting psychiatric examiner's opinion may be given great weight and may constitute substantial evidence to support a decision.")

(citations omitted); *Monroe v. Comm'r of Soc. Sec.*, No. 5:15-CV-1235(GTS/WBC), 2016 WL 7971330, at *8 (N.D.N.Y. Dec. 29, 2016) ("[T]he Second Circuit has made it clear that the opinions of State agency medical consultants ... may constitute substantial evidence to support an ALJ's RFC determination."). The ALJ had "both the ability and the responsibility to resolve conflicts in the evidence and to weigh all of the available evidence 'to make an RFC finding that is consistent with the record as a whole.'" *Carbee v. Comm'r of Soc. Sec.,* No. 1:17-CV-0051 (GTS), 2018 WL 333516, at *14 (N.D.N.Y. Jan. 9, 2018) (quoting *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013) (noting also that the ALJ's conclusions do not need to "perfectly correspond" with any of the opinions from medical sources in order to be supported by substantial evidence) (citation omitted)); *see also Dirisio v. Comm'r of Soc. Sec.*, No. 15-CV-1181(GTS), 2016 WL 7378930, at *4 (N.D.N.Y. Dec. 20, 2016) ("In formulating the RFC, an ALJ is not required to adhere to the entirety of one medical source's opinion.") (citing *Matta*, 508 Fed. App'x at 56). For the above reasons, the ALJ's consideration of the medical opinion evidence was supported by substantial evidence, and the evidence as a whole provides substantial support for the RFC finding. Remand is not warranted on this basis.

## VIII.  <u>STEP FIVE DETERMINATION</u>

### A.  **Legal Standards**

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question that incorporates plaintiff's

limitations.  *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).  Although the

ALJ is initially responsible for determining the claimant's capabilities based on all the

evidence (*see Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983)), a

hypothetical question that does not present the full extent of a claimant's impairments

cannot provide a sound basis for vocational expert testimony.  *See De Leon v. Sec'y of

Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F.

Supp. 497, 503-04 (S.D.N.Y. 1996).  Conversely, the ALJ may rely on a VE's testimony

regarding the availability of work as long as the hypothetical facts the expert is asked to

consider are based on substantial evidence and accurately reflect the plaintiff's

limitations.  *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009).  Where the

hypothetical is based on an RFC analysis supported by substantial facts, the hypothetical

is proper.  *Id*. at 276-277.

### B.    Application

Plaintiff argues that the step five determination is not supported by substantial

evidence because the hypothetical proposed to the VE did not incorporate the limitations

set forth by Dr. Lopez-Williams.  (Pl.'s Br. at 25).  This argument is based on plaintiff's

argument that the ALJ's RFC evaluation did not contain sufficient limitations as argued

above.  Because this court has found that the ALJ's RFC evaluation was supported by

substantial evidence, then the hypothetical question posed to the VE is equally

supported, and the ALJ's disability determination was sound.

**WHEREFORE**, based on the above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED** and the complaint

is **DISMISSED**, and it is

**ORDERED**, that judgment be entered for **DEFENDANT**.


Dated: September 18, 2019

Andrew T. Baxter
U.S. Magistrate Judge